**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

GARY L. SMITH, JR.,                 \*

    Plaintiff,             \*

         v.              \*       Civil Action No. JRR-22-523

WARDEN ARMSTEAD, *et al.*,      \*

    Defendants.          \*

                      \*\*\*

<u>**MEMORANDUM OPINION**</u>

Self-represented plaintiff, Gary L. Smith, Jr., an inmate presently incarcerated at Eastern Correctional Institution in Westover, Maryland, and formerly incarcerated at Patuxent Institution in Jessup, Maryland, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against Warden Armstead, Lieutenant Goldman, Sergeant Rajah,[1] Captain Bunn, and three unnamed officers.  ECF No. 1.  Plaintiff alleges that while he was held at Patuxent Institution, he was subjected to various violations of his Constitutional rights including denial of access to the ARP process, denial of access to the law library, deprivation of personal property, denial of adequate medical care, and various complaints regarding prison conditions.  *Id*.  In a supplement to his Complaint, Plaintiff clarified that he was requesting monetary damages.  ECF No. 12.

On December 20, 2022, Defendants filed a Motion to Dismiss, or in the Alternative for Summary Judgment.  ECF No. 18.  On February 16, 2023, Plaintiff filed his Response in Opposition to Defendants' dispositive motion.  ECF No. 25.

---

[1] Defendants correct the names of Warden Laura Armstead, Captain Crystal Bunn, and Lieutenant Sheryl S. Goldman. ECF No. 18-2.  They also suggest that Plaintiff intended to sue Sergeant Mathai Rajan, who was assigned to Patuxent Institution on the date and time in question, because there was no "Sgt. Rajah" present.  *Id*.  Finally, Defendants attempt to identify the unnamed officers, however, as the Complaint shall be dismissed, it is not necessary to positively identify them.  *Id*.  The Clerk shall be directed to correct the names of Defendants on the docket.

Having reviewed the submitted materials, the court finds that no hearing is necessary. Local Rule 105.6 (D. Md. 2023).  For the reasons set forth below, Defendants' Motion, construed as a Motion to Dismiss, will be granted in part and denied in part as outlined below.

## BACKGROUND

### A.  Plaintiff's Complaint

Plaintiff's verified Complaint alleges that on November 19, 2019, there was a fire set by inmates protesting the living conditions on the administrative segregation tier, M-3, at Patuxent Institution.  Comp., ECF No. 1 at 3.  Defendants Captain Bunn, Lieutenant Goldman, Sergeant Rajan, and three other officers responded to the fire alarm.  *Id*.  One officer put out the fire, and others opened windows as the fire continued to smolder.  *Id*.  The hallway filled with smoke, and Plaintiff had difficulty breathing.  *Id*.  Plaintiff informed Lt. Goldman of his history of asthma and difficulty breathing and asked to be moved off the tier.  *Id*.  Lt. Goldman replied that "'since you all like starting fires, you can just deal with it."  *Id*. at 4.  After the smoke had "cleared up mostly," inmates were ordered to turn over all institutional books and papers.  *Id*. at 5.  Plaintiff turned over the requested materials and asked for medical treatment at that time.  *Id*.  Officers then demanded that inmates turn over personal books and papers, and Plaintiff refused, telling the officers that he would "write them up for abuse of power, forced smoke inhalation, and denial of medical care."  *Id*.  Officer Rajan accused Plaintiff of starting the fire.  *Id*.  Plaintiff was handcuffed and frisked, and officers removed all of Plaintiff's personal property from his cell.  *Id*.

Following the fire, the windows were left open on the tier until 4 p.m. the next day.  ECF No. 1 at 5.  The power and heat on the tier were shut down for the night, allowing the tier to become cold.  *Id*.  As his property had been confiscated, Plaintiff was left without a blanket for several hours.  *Id*. at 5-6.

On November 26, 2019, Plaintiff was found not guilty of setting the fire, and he immediately requested his property be returned.  ECF No. 1 at 6.  The property was returned to Plaintiff the next day.  *Id*.

The power to the electrical outlets in the cells on the tier remained off until December 23, 2019.  ECF No. 1 at 6.  Plaintiff contends that he was deprived of electricity "as a punishment for the fires," and complains that he was unable to use his television or Xbox system.  ECF No. 1 at 6.  Plaintiff contends that some officers stated that the power was off as punishment for the fires, but Lt. Goldman stated that the power was "'messed up'" due to an inmate using an outlet to set a fire and that the system required a specialist to fix it.  *Id*.

Throughout his time on the tier, Plaintiff states that he was denied access to a law library, was not provided sufficient cleaning supplies, had no access to entertainment, and did not have desks, chairs, or storage resulting in his food and property being exposed to mice and bugs.  *Id*. at 7.

### B.  Defendants' Dispositive Motion and Plaintiff's Response in Opposition

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment together with a Memorandum of Law and Exhibits.  ECF Nos 18, 18-1 – 18-13.  Defendants argue that Plaintiff's Complaint should be dismissed because he failed to exhaust his administrative remedies, failed to state a claim upon which relief may be granted, and that they are entitled to qualified immunity.  Plaintiff filed a thirty-five page response in opposition including several exhibits, wherein he expands upon the allegations made in the Complaint and explains why his Complaint should not be dismissed for failure to exhaust administrative remedies.

### C.  Administrative Remedy Procedures

Records submitted by Defendants show that on November 8, 2019, Plaintiff filed a Request for Administrative Remedy ("ARP") complaining about the conditions in the administrative segregation unit, which included insufficient furniture and electrical outlets, insufficient recreational opportunities, lack of library services, and substandard food.  ECF No. 18-1 at 2-3.  The ARP was assigned Case Number PATX-0885-19.  *Id*. at 2.  On February 10, 2020, Plaintiff signed a withdrawal form for ARP PATX-0885-19.  ECF No. 18-5 at 1.  Inmate Grievance Office ("IGO") Director F. Todd Taylor, Jr. submitted a declaration averring that a grievance Plaintiff filed with the IGO, assigned IGO No. 202183, regarding ARP PATX-0885-19 was dismissed for failure to provide evidence of exhaustion; Taylor provides no documentation of that decision or notification to Plaintiff.  ECF No. 18-10 at 2.  Plaintiff submitted a copy of a letter from the IGO dated February 21, 2020, regarding IGO No. 20200183, wherein Plaintiff is instructed to "resubmit, following the proper procedures, with a brief and clearly stated statement of your grievance on the appropriate ARP form" and to "provide a copy of all missing paperwork or explanation within 30 days."  ECF No. 26.

On November 21, 2019, Plaintiff filed an ARP complaining that officers were not timely responding to his requests for ARP forms; his property was taken without being found guilty of a ticket; inmates were left in their cells during a fire and suffered smoke inhalation; and there was no heat in the tier due to open windows and lack of electricity for heat.  ECF No. 18-6 at 2-3.  This ARP was assigned Case Number PATX-0925-19.  *Id*. at 2.  Plaintiff signed a form withdrawing this ARP on March 25, 2020.  *Id*. at 1.  IGO Director Taylor does not specifically address whether Plaintiff filed a grievance with the IGO regarding this ARP.  *See* ECF No. 18-10 at 2.

On November 22, 2019, Plaintiff filed an ARP regarding the fire on November 19, 2019.  ECF No. 18-7 at 5.  Plaintiff complained that officers would not let inmates out of the cells during

the fire, instead telling inmates that they should not have started a fire. *Id*. The ARP further alleges that Plaintiff was not offered medical services. *Id*. at 6. On January 3, 2020, the ARP was dismissed after an investigation found that the staff responded to and extinguished the fire, an industrial fan was placed on the tier to remove the smoke, and Plaintiff was not injured. *Id*. at 1-3. Taylor states that Plaintiff did not file a grievance with the IGO regarding this ARP. ECF No. 18-10 at 2.

Plaintiff submitted copies of several other ARP's he filed while at Patuxent: October 16, 2019, officers not responding to requests for assistance (ECF No. 25-1); November 25, 2019, food served cold (ECF No. 25-4); November 25, 2019, officers were told not to pass out ARP's and food served cold (ECF No. 25-5); November 27, 2019, personal property was taken (ECF No. 25-7); November 29, 2019, electricity off (ECF No. 25-8); December 11, 2019, inhaled smoke during fire and was not provided with medical care (ECF No. 25-9); and December 27, 2019, not provided with glasses or eye doctor appointment (ECF No. 25-10). All of these ARP's are blank in the response and receipt sections. *Id*.

Plaintiff also submits copies of handwritten letters he says he sent to the IGO in place of appeals, since he could not get the appropriate appeals forms from officers. ECF No. 26-9. In addition, Plaintiff submits a copy of a letter from the IGO dated February 21, 2023, regarding IGO No. 20200182. ECF No. 26-11. The letter references an "unnumbered ARP," and instructs Plaintiff to send additional documentation. ECF No. 25-12. Finally, Plaintiff submits a copy of pages from the inmate handbook where the ARP and IGO processes are explained. ECF No. 25-11.

### STANDARDS OF REVIEW

#### A. Motion to Dismiss

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam). As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude

from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Proc. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

## B. Discovery

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries*, *Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (*per curiam*); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its

opposition," without needed discovery.  FED. R. CIV. P. 56(d); *see also Harrods Ltd.*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd.*, 302 F.3d at 244 (citations omitted).  Despite the absence of the non-moving party's Rule 56(d) affidavit, the court shall not issue a summary judgment ruling that is obviously premature.  Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court

'served as the functional equivalent of an affidavit.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002) (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

### C. Summary Judgment

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the court must also abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Plaintiff failed to exhaust his administrative remedies.  If Plaintiff's claim has not been properly presented through the administrative remedy procedure, it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant.  *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).  Nevertheless, a claim that has not been exhausted may not be considered by this court.  *See Bock*, 549 U.S. at 220.  In other words, exhaustion is mandatory.  *Ross v. Blake*, 578 U.S. 632, 639 (2016).  Therefore, a court ordinarily may not excuse a failure to exhaust.  *Id.* (citing *Miller v.*

*French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'…normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he…PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland prisons, the Administrative Remedy Procedure is the administrative process that must be exhausted. MD. CODE REGS. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. MD. CODE REGS. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); MD. CODE REGS. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); MD. CODE REGS. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. MD. CODE REGS. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the

Inmate Grievance Office ("IGO").  MD. CODE. ANN., CORR. SERVS. §§ 10-206, 10-210; MD. CODE

REGS. § 12.07.01.05(B).  Inmates may seek judicial review of the IGO's final determinations in a

Maryland Circuit Court.  MD. CODE ANN., CORR. SERVS. § 10-210(a).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a).  In *Ross v. Blake*,

the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the

PLRA."  578 U.S. 632, 635 (2016).  Specifically the Court rejected a "special circumstances"

exception to the exhaustion requirement but reiterated that "[a] prisoner need not exhaust remedies

if they are not 'available.'"  *Id*. at 635-36.  "[A]n administrative remedy is not considered to have

been available if a prisoner, through no fault of his own, was prevented from availing himself of

it."  *Moore v. Bennette,* 517 F.3d at 725.

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for

the action complained of.'"  *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738

(2001)).  Thus, an inmate must complete the prison's internal appeals process, if possible, before

bringing suit.  *Chase v. Peay*, 286 F.Supp.2d 523, 529-30 (D. Md. 2003), *aff'd*, 98 Fed. App'x.

253 (4th Cir. 2004).  As a prisoner, Mr. Jones is subject to the strict requirements of the exhaustion

provisions.  *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion

requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional

conduct).  Exhaustion is also required even though the relief sought is not attainable through resort

to the administrative remedy procedure.  *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable

and an inmate's duty to exhaust available remedies "does not come into play."  578 U.S. at 643.

First, "an administrative procedure is unavailable when (despite what regulations or guidance

materials may promise) it operates as a simple dead end—with officers unable or consistently

unwilling to provide any relief to aggrieved inmates." *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, it is undisputed that Plaintiff failed to appeal the denial of his ARPs to the Commissioner of Corrections, as required.  Plaintiff explains that he did not do so because the vaguely written inmate handbook did not adequately explain the process, and because officers refused to provide him with the necessary forms.  ECF No. 1 at 2.  In support, Plaintiff points to the inmate handbook which does not address appeals to the Commissioner of Corrections, but instead includes a lengthy section on filing grievances to the IGO.  ECF No. 25-1.  In addition, Plaintiff avers that "every single officer of whom the plaintiff came in contact with claim[ed] no knowledge of any appeal forms available anywhere within the institution."  ECF No. 1 at 2.

Defendants do not contest Plaintiff's contention that he tried and failed to obtain the appeals forms or the authenticity of the inmate handbook excerpt submitted by Plaintiff.  Plaintiff is correct that the excerpt he submitted of the inmate handbook does not mention any appeal to the Commissioner of Correction but contains detailed section regarding the IGO.  *See* ECF No. 25-11. His interpretation that appeals should be directed to the IGO is not unreasonable.  Therefore, without the appeals forms (which presumably include instructions for submission to the Commissioner of Correction), Plaintiff had no way of knowing where to send his appeal.

Defendants argue that even if Plaintiff's understanding of the process, that appeals should be submitted directly to the IGO, were correct, he failed to do so.  However, Defendants, whose

burden it is to prove non-exhaustion, have provided an incomplete and confusing record of Plaintiff's correspondence with the IGO making it impossible to discern whether, in fact, Plaintiff did appeal each of his relevant ARP's to the IGO. Director Taylor's declaration addresses ARPs PATX-928-19 (saying there is no grievance filed) and PATX-0885-19 (erroneously stating that the grievance was dismissed), but it does not address PATX-0925-19. ECF No. 18-10 at 2; *see also*, ECF No. 26. Plaintiff submitted a copy of an IGO response regarding an "unknown ARP," that was not acknowledged by Taylor or Defendants. The computer database records as well as the additional IGO letter submitted by Plaintiff indicate that Plaintiff may have appealed other ARPs that are not acknowledged by Defendants. ECF Nos. 18-11 and 25-12.

Plaintiff has presented unrefuted evidence that he was prevented from correctly appealing his ARPs to the Commissioner of Correction both through the misleading instructions in the inmate handbook and his inability to obtain appeal forms. Instead, he attempted to appeal directly to the IGO. However, due to the incomplete and conflicting information regarding Plaintiff's IGO grievances, there is not sufficient evidence to make a finding that Plaintiff has failed to exhaust his available administrative remedies, and the Motion cannot be granted on that basis.

## B. Plaintiff's Claims

Plaintiff alleges several violations of his constitutional rights: 1) denial of access to the ARP process; 2) denial of access to the law library; 3) deprivation of personal property; 3) denial of adequate medical care; and 5) unconstitutional prison conditions. Notwithstanding detailed Complaint and Response in Opposition to Defendants' dispositive motion, he fails to state a claim upon which relief can be granted. The Court will address each of his claims in turn.

### 1. Access to the Administrative Remedy Procedure

Plaintiff alleges that he was denied access to the administrative remedies procedure because the inmate handbook was purposefully misleading as to the appeals process and officers did not timely provide ARP forms and did not provide appeals forms at all.  ECF No. 1 at 2.  He suggests that this is a violation of his due process rights.  *Id*.  This claim has no merit, because "inmates have no constitutional entitlement or due process interest in access to a grievance procedure.  An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process."  *Booker v. South Carolina Department of Corrections*, 855 F.3d 533 (4th Cir. 2017) (citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)).  Importantly, an inmate's failure to exhaust administrative remedies is an affirmative defense that should be pleaded or otherwise properly raised by the defendant.  *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F. 3d 674, 681 (4th Cir. 2005).  Therefore, a prisoner-plaintiff may present evidence in response to the affirmative defense that their attempts to exhaust administrative remedies were thwarted or otherwise unavailable, exactly as Plaintiff did here.  Thus, Plaintiff's inability to access the administrative remedy procedure does not run afoul of the due process clause.  To the extent Plaintiff implies his lack of access to the administrative remedy procedure adversely impacted his First Amendment right of access to courts, that claim is analyzed below.

## 2.  Access to the Law Library

Plaintiff contends that he was denied access to a law library throughout his stay on the M-3 tier.  ECF No. 1 at 6.  He states that he had "so little access to library services, he had no way to even turn in his overdue books."  *Id*.

Plaintiff's assertion that Defendants failed to provide access to a law library is construed as an alleged violation of his First Amendment right of access to courts.  Indeed, prisoners have a

constitutionally protected right of access to the courts.  *See Bounds v. Smith*, 430 U.S. 817, 821 (1977).  However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355).  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  *Lewis*, 518 U.S. at 349.  Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.  *Id.* at 399.  Conclusory allegations are not sufficient in this regard.  *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal).  Rather, the complaint must contain a sufficient description of the predicate claim to permit an assessment of whether it is "nonfrivolous" or "arguable."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, Plaintiff has not described any actual injury related to his lack of access to the law library, outside his inability to return overdue books.  He does not identify any ongoing,

nonfrivolous, and arguable claim that he was prevented from pursuing.  In the instant case, Plaintiff

filed a detailed Complaint as well as a comprehensive response to Defendants' dispositive motion,

including relevant exhibits.  There is nothing in his Complaint to suggest that the lack of a law

library has impeded him in his pursuit of this or any other case.

Further, his lack of access to the administrative remedy procedure has also not impeded his

access to courts.  The tools required by *Bounds*, 430 U.S. at 821 "are those that the inmates need

in order to attack their sentences, directly or collaterally, and in order to challenge the conditions

of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  Impairment of other capacities

to litigate are consequential to incarceration and are constitutional. *Id*.  As there is no discernible

injury suffered by Plaintiff, his access to courts claim fails.

### 3.  Property Claim

Plaintiff alleges that he was deprived of his personal property while he awaited a

disciplinary hearing at which he was found not guilty of setting the fire in the tier.  ECF No. 1 at

3-4.  He further alleges that the property was taken without proper processes such as a confiscation

form or inventory sheet. *Id*.  The property was returned to Plaintiff the day after the hearing. *Id*.

at 6.  These facts do not constitute a Constitutional violation.  The United States Supreme Court

has held that claims of negligent deprivation of property by a prison official do not implicate the

Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986).  A claim of intentional

deprivation of property by a prison official also would not state a constitutional due process claim,

provided that the prisoner has access to an adequate post-deprivation remedy. *Hudson v. Palmer*,

468 U.S. 517, 533 (1984); *Tydings v. Dep't of Corrections*, 714 F.2d 11, 12 (4th Cir. 1983) (finding

that Virginia law provides for an adequate post-deprivation remedy).  The right to seek damages

and injunctive relief in Maryland courts in a tort action constitutes an adequate post-deprivation

remedy for inmates in Maryland prisons. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982) ("[T]here is no question that the relief available to plaintiff in state court is adequate."); *see also Hawes v. Foxwell*, No. DKC-17-2598, 2018 WL 2389060 at *4 (D. Md. May 25, 2018) (noting that the Maryland Tort Claims Act and the IGO provide adequate post-deprivation remedies), *Fuller v. Warden*, No. WMN-12-43, 2012 WL 831936 at *2 (D. Md. Mar. 8, 2012). Furthermore, A violation of prison policy alone does not state a Fourteenth Amendment due process violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers*).

Thus, the claim that Plaintiff's personal property was temporarily kept from him pending a disciplinary hearing does not state a claim for relief. *See Hawes*, 2018 WL 2389060 at *4 (D. Md. May 25, 2018) (dismissing an inmate's property loss claim for failure to state a cognizable constitutional claim); *Fuller v. Horning*, No. WMN-11-1917, 2012 WL 2342947, at *7 (D. Md. June 19, 2012), *aff'd,* 504 F. App'x 218 (4th Cir. 2013) (stating that "removal of property from a prisoner simply does not state a constitutional claim"); *Young-Bey v. Miller*, No. JKB-16-3435, 2018 WL 4108076 at *4 (D. Md. Aug 29, 2018) (holding that a claim that personal property was destroyed did not assert a constitutional violation). Defendants' Motion will be granted as to this claim.

### 4. Denial of Medical Care

Plaintiff claims that he was denied medical care for two weeks following the fire on his tier on November 19, 2019. ECF No. 1 at 3-4. Plaintiff stated that after the fire was extinguished and windows were opened, he informed Lt. Goldman that he had a history of asthma and was having difficulty breathing, and he requested to be moved off the tier. *Id*. at 4. He alleges that Lt. Goldman responded, "'[s]ince you all like starting fires, you all can just deal with it.'" *Id*. Later, officers

returned to the tier to collect books and papers, at which point Plaintiff asked for medical attention. *Id*. at 4.  When officers requested personal books and papers in addition to institutional materials, Plaintiff protested and threatened to "write them up for abuse of power, forced smoke inhalation, and denial of medical care."  *Id*.

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *See Farmer*, 511 U.S. at 839, 840; *see also Anderson*, 877 F.3d at 544.  Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of

that risk.").  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).  The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted."  *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable.").  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)) *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).

Here, Plaintiff alleges that he complained to Lt. Goldman that he was having difficulty breathing and that he had asthma.  ECF No. 1 at 4.  Instead of providing medical assistance or removing Plaintiff from the smoky premises, Lt. Goldman allegedly replied "[s]ince you all like starting fires, you can just deal with it."  *Id*.  Plaintiff alleges that Sgt. Rajan repeated this statement, and that Cpt. Bunn heard the exchange but did not take any action.  *Id*.  Plaintiff claims that he continued to request medical assistance but did not receive any medical care for a period of two

weeks following the fire.  ECF No. 1 at 3-4.  Construed liberally, Plaintiff's difficulty breathing due to asthma and/or smoke inhalation could be considered a serious medical need.  Plaintiff has clearly alleged that Defendants Goldman, Rajan, and Bunn were aware of his complaints that he was having difficulty breathing and asthma and did not act, instead expressing that he could "deal with it."  *Id*. at 4.  Construed as a Motion to Dismiss, Defendants' Motion is denied as to Plaintiff's claim of failure to provide adequate medical care.  Defendants will be provided an opportunity to file a renewed motion for summary judgment addressing this claim.

### 5. Prison Conditions

Finally, Plaintiff makes numerous allegations regarding the conditions of his confinement, including exposure to smoke following the fire; exposure to cold due to windows being left open after the fire and lack of a blanket; no electricity or heat for a night following the fire; no access to electricity in his cell for a month; lack of cleaning supplies; failure of officers to complete rounds; no access to a library; lack of desks, chairs, or storage; and lack of entertainment.  ECF No. 1 at 5-7.

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society."  *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition

imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Where an inmate was confined for six days in cells described as "shockingly unsanitary," the Supreme Court has held that the prison officials responsible for the inmate's confinement had fair warning that their specific acts were unconstitutional. *Taylor v. Riojas*, __ U.S. ___, 141 S.Ct. 52, 2020 WL 6385693, *1 (Nov. 2, 2020).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of "a serious or significant physical or emotional injury resulting from the challenged conditions." *See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d

at 770).  In addition, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305.

None of the conditions described by Plaintiff deprived him of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 447.  Plaintiff was subjected to smoke inhalation due to a fire on his tier, but officers responded, extinguished the fire, and opened windows.  He admits that the smoke had "cleared up mostly" after a few minutes.  ECF No. 1 at 5.  The windows were left open and power and heat were off for one night to ameliorate the smoky air, but there is nothing in the Complaint to suggest that the temperature was dangerously cold.  Notably, Plaintiff's blanket, which had been confiscated with the rest of his property, was returned to him after a few hours.  *Id.*  None of Plaintiff's remaining complaints – lack of recreation, furniture, cleaning products, etc. import any risk to his health or safety, much less an excessive risk.  As he has not alleged any violation of his Eighth Amendment rights, Defendants' Motion to Dismiss must be granted as to that claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion, construed as a Motion to Dismiss, is denied as to Plaintiff's claim for failure to provide adequate medical care; the Motion is granted as to all other claims.  Defendants will be provided an opportunity to file a renewed dispositive motion addressing the remaining claim.

A separate Order follows.

9.14.2023
_____
Date

/S/
_____
Julie R. Rubin
United States District Judge

24